646 P.2d 561

PUBLIC SERVICE COMPANY OF NEW
MEXICO, a corporation, Plaintiff,

v.

Thomas B. CATRON, III, et
al., Defendants,

Mark ISH, Peter Pineda, Dana Pineda
and Nancy Fischer,
Plaintiff-in-Intervention-Appellants,

v.

PUBLIC SERVICE COMPANY OF NEW
MEXICO, a corporation,
Defendants-Appellees.

PUBLIC SERVICE COMPANY OF NEW
MEXICO, a corporation,
Petitioner-Appellant,

v.

Thomas B. CATRON, III, Respondent,

and

Mark Ish, Peter Pineda, Dana Pineda
and Nancy Fischer,
Intervenors-Appellees.

Nos. 13725, 13749.

Supreme Court of New Mexico.

April 13, 1982.

Felker, McFeeley & Ish, Randolph B. Felker, Santa Fe, for Mark Ish, et al.

Montgomery & Andrews, Michael W. Brennan, Santa Fe, for Public Service Co.

## OPINION

RIORDAN, Justice.

The Public Service Company of New Mexico (PNM) filed a condemnation action to condemn property, adjacent to the property owned by Peter Pineda, Dana Pineda, Mark Ish and Nancy Fischer (Appellants), for a high voltage overhead electrical transmission line. Appellants filed a Complaint in Intervention seeking damages for inverse condemnation. The district court granted a motion to dismiss the Complaint in Intervention for failure to state a claim upon which relief may be granted. Appellants filed their Notice of Appeal, pursuant to N.M.R.Civ.App. 3(a), N.M.S.A.1978, the day after the time for filing the Notice of Appeal had expired. The district judge granted the Appellants an extension of time for filing the Notice of Appeal. N.M.R.Civ. App. 3(f), N.M.S.A.1978. Appellants appeal from the dismissal of the Complaint in Intervention. PNM appeals the trial court's ruling extending the time for filing the Notice of Appeal.

The issues on appeal are:

I. Whether the Notice of Appeal was timely filed.

II. Whether the Appellants' Complaint in Intervention properly states a claim upon which relief can be granted.

### I.

The trial court dismissed the Appellants' complaint on March 18, 1981. The last day for filing the Notice of Appeal was Good Friday, April 17, 1981. The court clerk's office had closed at noon and did not reopen for normal business that day. On April 20, 1981, the Appellants filed a Motion to Extend the Time to File Notice of Appeal and filed a Notice of Appeal. The Appellants allege that they tried to file the Notice of Appeal on the afternoon of April 17, but were unable to do so because of the afternoon closure.

Rule 23(a) of the New Mexico Rules of Appellate Procedure for Civil Cases, N.M.S. A.1978, states:

In computing any period of time prescribed or allowed by these rules, by order of court or by any applicable statute, the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included unless it is a Saturday, Sunday or legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday or a legal holiday. *For purposes of this rule a legal holiday shall include any day during which the office of the clerk of the appropriate court is closed for any consecutive period of three hours or more between 8:30 a. m. and 4:30 p. m.* [Emphasis added.]

Although under Section 12–5–2, N.M.S.A.1978, Good Friday is not listed as a designated Legal Holiday, Rule 23(a) defines legal holiday for the purpose of the rules set forth for appellate civil procedure. Therefore, since the clerk's office was closed all afternoon and the following two days were Saturday and Sunday, the last day to file the Notice of Appeal would have been Monday, April 20, 1981. The trial judge, therefore, did not have to rule on the Motion for Extending the Time for Filing the Notice of Appeal, because the Notice of Appeal was properly filed the morning of April 20, 1981.

### II.

PNM is proposing the location of a high voltage overhead electrical transmission line adjacent to the Appellants' property. Appellants' Complaint in Intervention for

inverse condemnation claims that their property will be particularly and directly damaged by PNM's activities. The Appellants contend that the proposed transmission line will destroy the peaceful, unobstructed, rural nature of the property, will obstruct their panoramic and scenic view, will interfere with television and radio reception and will emit a loud noise and hum.

█ A Complaint in Intervention is used when a third party is permitted to become a party to an action or proceeding between other parties. The third party claims an interest in the subject matter in dispute, in order to better protect his rights. *Stillwell Hotel Co. v. Anderson*, 16 Cal. App.2d 636, 61 P.2d 71 (1936); *See Fireman's Fund Insurance Company v. Gerlach*, 56 Cal.App.3d 299, 128 Cal.Rptr. 396 (1976). The Appellants' interest is the power line being placed on the adjacent property; they allege that PNM will in effect, be taking their property. Inverse condemnation is a "cause of action against a government agency to recover the value of property taken by the agency, though no formal exercise of the power of eminent domain has been completed." *Black's Law Dictionary* 740 (5th ed. 1978). The New Mexico Constitution, Article II, Section 20 states that "[p]rivate property shall not be taken or damaged for public use without just compensation." In order for an owner of private property to be compensated, an actual taking of the property is not required; it is sufficient if there are consequential damages. *Board of County Com'rs, Lincoln County v. Harris*, 69 N.M. 315, 366 P.2d 710 (1961). However, in order to be compensated, the damage to the property must affect some right or interest which the landowner enjoys and which is not shared or enjoyed by the public generally. The damage must be different in kind, not merely in degree, from that suffered by the public in general. *Troiano v. Colorado Department of Highways*, 170 Colo. 484, 463 P.2d 448 (1969). Also, not

'every diminution in the value of property that is caused by a public improvement [is authorized a remedy]. The damage for which compensation is to be made is a damage to the property itself, and *does not include a mere infringement of the owner's personal pleasure or enjoyment.* Merely rendering private property less desirable for certain purposes, or even causing personal annoyance or discomfort in its use, will not constitute the damage * * * but the property itself must suffer some diminution in substance, or be rendered intrinsically less valuable, by reason of the public use * * *.' (Citation omitted.) [Emphasis added.]

*People v. Symons*, 54 Cal.2d 855, 858–859, 9 Cal.Rptr. 363, 365, 357 P.2d 451, 453 (1960); *See Aguayo v. Village of Chama*, 79 N.M. 729, 449 P.2d 331 (1969).

The first assertions of the Appellants are the obstruction of their panoramic and scenic view and a disruption of the peaceful and rural nature of their property. The general rule on loss of view is that:

An owner whose only complaint is an interference with his view caused by the construction of public work is not entitled to damages * * *.

2 Nichols', *The Law of Eminent Domain* § 5.72[1] at 5–167 (3d rev. ed. 1979).

█ Damages cannot be recovered because of the unsightly character of a structure; and aesthetic considerations are not compensable in the absence of a legislative provision. *Gervasi v. Board of Com'rs of Hicksville Wat. Dist.*, 45 Misc.2d 341, 256 N.Y.S.2d 910 (App.Div.1965). In *Gervasi*, neighborhood residents complained of the construction of a water tower. None of the plaintiffs' lands were taken. The court held that the unsightly character of a structure or aesthetic consideration are not compensable when no land is taken. The court brought up the point that in the absence of legislative direction, if recovery is permitted to an owner from whom no property has been taken, yet whose property lies adjacent to the property on which the improvement is erected, then how remote would property have to be before the owner's claim would be barred. Also, in *Public Util. Dist. No. 1 of Snohomish Cty. v. Kottsick*, 86 Wash.2d 388, 545 P.2d 1 (1976), the

appellants owned land that abutted the proposed site of a transmission line. They alleged aesthetic damage to their property. The court held that the anticipated interference with a landowner's view by the construction of a proposed transmission line by county public utility, did not constitute a taking which required just compensation.

■ Other cases that have rejected compensation for loss of view by the construction of a public improvement include *Troiano v. Colorado Department of Highways, supra; Probasco v. City of Reno*, 85 Nev. 563, 459 P.2d 772 (1969). Therefore, the trial court properly dismissed the motion for failure to state a cause of action concerning the lost view and disruption of the rural nature of the property.

The next assertion is that the line will interfere with radio and television reception. In *People Ex. Rel. Hoogasian v. Sears, Roebuck and Co.*, 52 Ill.2d 301, 287 N.E.2d 677, *cert. denied*, 409 U.S. 1001, 93 S.Ct. 323, 34 L.Ed.2d 262 (1972), the plaintiffs in a nuisance action, alleged that the continued construction of a building that was already 50 stories high would interfere with the television reception in the area which would depress property values in the area. The Illinois Supreme Court rejected the plaintiff's claim. The court held that adjoining land owners have an equal right under the law to build to the line of their tract and to such a height as is desired by them. (Zoning or building regulations or restrictions excluded.)

> 'So use your own as not to injure another's property is, indeed, a sound and salutary principle for the promotion of justice, but it may not and should not be applied so as gratuitously to confer upon an adjacent property owner incorporeal rights incidental to his ownership of land which the law does not sanction.' (Citation omitted.)

*Id.* at 305, 287 N.E.2d at 679. The Massachusetts Supreme Court reached the same conclusion in a private nuisance action, when a radio broadcasting station complained that certain construction plans by an adjoining landowner would, if imple-

mented, distort the radio signals transmitted by the station. The court rejected the station's claim. *Richmond Brothers, Inc. v. Hagemann*, 359 Mass. 265, 268 N.E.2d 680 (1971).

■ Therefore, the trial court properly dismissed the motion for failure to state a cause of action concerning the interference with radio and television reception.

■ The last claim of the Appellants is that the line will emit a loud noise and hum. Case law has not allowed damages in inverse condemnation from noise emanating from adjacent highways. In *Sperry v. State*, 50 A.D.2d 618, 374 N.Y.S.2d 421, 424 (1975), *aff'd mem.*, 40 N.Y.2d 997, 391 N.Y. S.2d 106, 359 N.E.2d 700 (1976), the court held that "[w]here there has been no partial taking of property by appropriation, an owner whose property adjoins a public highway is not entitled to damages resulting from the depreciation of his property due to noise of cars and trucks passing on the highway." (Citation omitted.) Also in *People v. Symons, supra*, the court held that when a "public improvement is made on property adjoining that of one who claims to be damaged by such general [factor] as ... noise ... there can be no recovery where there has been no actual taking or severance of the claimant's property." *Id.* 54 Cal.2d at 860, 9 Cal.Rptr. at 366, 357 P.2d at 454.

Some courts, however, have allowed damages for noise from local airports. *Bellarmine College Prep. v. City of San Jose*, 81 Cal.App.3d 813, 146 Cal.Rptr. 757 (Ct.App. 1978); *Aaron v. City of Los Angeles*, 40 Cal.App.3d 471, 115 Cal.Rptr. 162 (Ct.App. 1974), *cert. denied*, 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822 (1975). In *Aaron*, the court found that the noise of incoming and outgoing airplanes caused a severe disturbance and interference with the residential use and enjoyment of nearby property. Therefore, the court allowed damages in inverse condemnation.

■ However, we follow the reasoning in the highway cases, and hold that there will be no recovery of damage in inverse con-

demnation where there has been no actual taking of the Appellant's property.

We hold that the trial court *properly* dismissed the cause of action. The trial court is affirmed.

IT IS SO ORDERED.

EASLEY, C. J., SOSA, Senior Justice, and PAYNE, J., concur.

FEDERICI, J., not participating.