2004-NMCA-072

93 P.3d 762

**Carolyn TAKHAR, individually and as trustee of the Greeb S. Takhar Testamentary Trust, Plaintiff–Appellant,**

**v.**

**TOWN OF TAOS, Defendant–Appellee.**

**No. 23,551.**

Court of Appeals of New Mexico.

April 27, 2004.

Certiorari Denied, No. 28,682, June 11, 2004.

Connie Odé, Mary E. Humphrey, El Prado, for Appellant.

Frank T. Herdman, Rubin Katz Law Firm, P.C., Santa Fe, for Appellee.

## OPINION

SUTIN, Judge.

{1}   The Town of Taos halted completion of Plaintiff's apartment complex, requiring Plaintiff to obtain a special use permit before continuing with completion of the complex. The Town's asserted reason for stopping completion was that the approvals and permits issued for the project were based on Plaintiff's misstatement of acreage, causing impermissible density. Plaintiff sought and was denied a special use permit. She then filed an action in district court asserting claims of estoppel and inverse condemnation. The district court granted the Town's Rule 1–012(B)(6) NMRA 2004 motion to dismiss. Plaintiff appeals. We reverse.

## BACKGROUND

### Plaintiff's Factual Averments

{2}   When dismissal is under Rule 1–012(B)(6), we look at the well-pleaded factual averments in the complaint. *See Valdez v. State*, 2002–NMSC–028, ¶ 4, 132 N.M. 667, 54 P.3d 71 ("[W]e accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of sufficiency of the complaint."); *Derringer v. State*, 2003–NMCA–073, ¶ 5, 133 N.M. 721, 68 P.3d 961 ("A motion to dismiss for failure to state a claim ... tests the legal sufficiency of the complaint, accepting all well-pleaded factual allegations as true."); *Gutierrez v. W. Las Vegas Sch. Dist.*, 2002–NMCA–068, ¶ 7, 132 N.M. 372, 48 P.3d 761 ("In reviewing a dismissal under Rule 1–012(B)(6), [we assume] the truth of the facts alleged in the complaint." (alteration in original) (internal quotation marks and citation omitted)). The pertinent factual averments follow.

{3}   In August 1997, Plaintiff Carolyn Takhar commenced development and construction of an apartment unit project on approximately 2.5 acres, having obtained "the necessary approvals from the Town of Taos," which included a building permit to her contractor. In November 1998, the Town granted Plaintiff a certificate of occupancy for twenty units completed pursuant to the building permit, and Plaintiff began leasing those units in April 1999. Plaintiff's contractor proceeded with the completion of another twenty-two units pursuant to the building permit. In January 2000, at the Town's request, Plaintiff "submitted 'as built' plans for the project [totaling forty-two units] to the Town." In June 2000, the Town required the contractor to reapply for a building permit, as a result of a dispute between the Town and the State Construction Industries Division, and the Town reissued the same building permit.

{4}   In October 2000, Plaintiff terminated her contractor, notified the Town of the termination, and requested reissuance of the building permit for another contractor. At that time, the project was over eighty percent complete. In November 2000, as the new contractor sought a new permit to complete the project, the Town informed Plaintiff for the first time that she would be required to apply for a special use permit "because the units previously built and approved ... exceeded applicable density levels." In a sub-

sequent meeting, Plaintiff was told by the Town's mayor to complete up to thirty-five units, seeking approval from the Town's Planning and Zoning Commission (the Commission). In December 2000, having been allowed to complete only eight additional units, for a total of twenty-eight completed units, Plaintiff applied for a special use permit. That application was denied by the Commission in March 2001 and Plaintiff's appeal of that decision was denied by the Town Council in September 2001.

{5} Plaintiff expended over $2,000,000 in development and construction of the project and was sustaining significant monthly losses as a result of the Town's decision to limit occupancy to twenty-eight units. Plaintiff was unable to lease fourteen of the remaining planned and constructed units and was incurring interest and penalties on outstanding loans.

**Proceedings**

{6} Plaintiff contended in district court that she had a vested right to complete and lease all contemplated forty-two units. Based on a claim of estoppel, she asked the court to order that she be permitted to complete and lease all units in the project. She also sought temporary and permanent damages, pursuant to NMSA 1978, § 42A–1–29 (1983), because the Town effectively condemned the property.

{7} The Town moved to dismiss under Rule 1–012(B)(6), on the grounds Plaintiff's claims were barred because she did not appeal the Town Council's denial of her request for a special use permit, Plaintiff failed to state a cause of action for estoppel, her claims for promissory estoppel were barred by governmental immunity, and she failed to state a claim for inverse condemnation. The district court granted the motion and dismissed the complaint and claims with prejudice.

**DISCUSSION**

{8} We review de novo a district court's Rule 1–012(B)(6) dismissal. *Valdez,* 2002–NMSC–028, ¶ 4, 132 N.M. 667, 54 P.3d 71; *Derringer,* 2003–NMCA–073, ¶ 5, 133 N.M. 721, 68 P.3d 961. Well-pleaded facts are accepted as true and all doubts are resolved in favor of the sufficiency of the complaint. *Valdez,* 2002–NMSC–028, ¶ 4, 132 N.M. 667, 54 P.3d 71; *Derringer,* 2003–NMCA–073, ¶ 5, 133 N.M. 721, 68 P.3d 961. The dismissal is proper only if it appears that the plaintiff cannot recover under any state of the facts provable under the claim. *Valdez,* 2002–NMSC–028, ¶ 4, 132 N.M. 667, 54 P.3d 71; *Derringer,* 2003–NMCA–073, ¶ 5, 133 N.M. 721, 68 P.3d 961; *Gutierrez,* 2002–NMCA–068, ¶ 7, 132 N.M. 372, 48 P.3d 761.

**1. Failure to Appeal the Town Council's Denial of the Special Use Permit**

{9} The Town contends that Plaintiff, not having appealed the denial by the Town Council of the special use permit, pursuant to NMSA 1978, § 39–3–1.1 (1999) and Rule 1–074 NMRA 2004, is bound by the Town Council's decision. The Town asserts that Plaintiff cannot, for several reasons we discuss in this opinion, collaterally attack that decision in the district court. Plaintiff asserts that she was not required to appeal because the denial of her application does not serve as a basis for her claims. Plaintiff emphasizes that "[t]he Town's denial of her application for a special use permit has nothing to do with her claims, which accrued upon the Town's insistence that she obtain an entirely new and different permit—a special use permit." Plaintiff views the denial of the application to be immaterial. Her claims are not based on the rejection of that application, but on the Town's requirement that she obtain a special use permit in order to complete the project. Her causes of action accrued in November 2000, well before she filed the application for the special use permit.

{10} Plaintiff also asserts that she pursued the application in order to comply with a United States Supreme Court requirement that in order to seek relief in federal court she must first obtain a final decision through the administrative process to determine whether a "mutually acceptable solution" might be reached with the local authority. *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186–87, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) (internal quotation marks and citation omit-

ted). In *Williamson County,* the United States Supreme Court ruled that the bank's Fifth Amendment ("Just Compensation" or "Taking" Clause) claim asserted through 42 U.S.C. § 1983 was not ripe because the bank had "not yet obtained a final decision regarding how it will be allowed to develop its property." *Williamson County,* 473 U.S. at 190, 105 S.Ct. 3108. For the bank to bring such a damages claim in federal court based on the local zoning authority's denial of its use of land, the bank was required to show (1) that it sought a variance from the local authority in order to ensure that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue," and (2) that it sought compensation through state procedures. *Id.* at 186–87, 194, 105 S.Ct. 3108; *see also John Corp. v. City of Houston,* 214 F.3d 573, 583–85 (5th Cir.2000) (discussing the manner in which the *Williamson County* finality requirements have been applied in the federal circuit courts in relation to due process and equal protection claims).

■ {11} Under *Williamson County,* a state's procedure, where a local authority's decision is merely reviewed on appeal, does not affect the finality of the decision for the purpose of a federal court claim because such a procedure only permits a determination as to whether the local authority erred; it is merely a review of the effect of the final decision made by the initial government agency that is regulating the land use. *See Williamson County,* 473 U.S. at 193, 105 S.Ct. 3108 (distinguishing, in the context of conditions precedent to a federal court action, between (1) the finality of a decision that constitutes "a definitive position . . . that inflicts an actual, concrete injury," and (2) whether administrative remedies must be exhausted through "review of an adverse decision [to] obtain a remedy if the decision is found to be unlawful"); *see also Cumberland Farms, Inc. v. Town of Groton,* 247 Conn. 196, 719 A.2d 465, 473, 475–76 (1998) (holding that the plaintiff was not required, before bringing an inverse condemnation action, to pursue an administrative appeal to the superior court); *Electro–Tech, Inc. v. H.F. Campbell Co.,* 433 Mich. 57, 445 N.W.2d 61, 73

(1989) (applying *Williamson County* and holding that the plaintiff was not required to appeal a site-plan decision in the process of completing "the available procedures which might have enabled it to build"); *cf. City & County of Denver v. Stackhouse,* 135 Colo. 289, 310 P.2d 296, 298–99 (1957) (en banc) (holding that claim for estoppel could proceed in court without the plaintiff first appealing zoning administrator's decision to administrative board of appeals, since the board did not have "jurisdiction to entertain plaintiff's equitable right of action").

{12} Based on these propositions, Plaintiff argues that she lost no right to claim estoppel and inverse condemnation by failing to appeal to the district court under Section 39–1–1.1 and Rule 1–074, since such appellate review does not empower the district court to engage in regulatory decision-making. *See Hart v. City of Albuquerque,* 1999–NMCA–043, ¶ 13, 126 N.M. 753, 975 P.2d 366 (holding court's instruction to regulatory decision-maker to take certain action exceeded the court's authority); *see also Coe v. City of Albuquerque,* 76 N.M. 771, 774, 418 P.2d 545, 547 (1966) (holding statute permitting court to zone land to be unconstitutional under separation of powers doctrine). According to Plaintiff, it is the Town Council's decision to halt completion that provided the finality and constituted the taking, it was based on that decision that she sought a special use permit, and it was the denial of the special use permit by the Town Council that provided ultimate finality. These circumstances, Plaintiff argues, satisfied her right to invoke the original jurisdiction of the district court to assert claims of estoppel and inverse condemnation. Further, Plaintiff asserts, it is the finality of the Town Council's denial of her right to complete the project that satisfies the finality prong of *Williamson County* for a future action in federal court.

{13} The Town concedes that Plaintiff was "[not] required to pursue an appeal of the Council's decision as a condition for pursuing her claims below." Rather, the Town asserts, "Plaintiff's claims are barred as a matter of law because she is bound by the Council's final decision on the issue of density." The Town's argument essentially is that

Plaintiff is stuck with the Town Council's decision on the special use permit precisely because it is a final decision on the merits of the density issue. The Town argues that, if Plaintiff is not barred from pursuing her estoppel and inverse condemnation claims in district court due to her failure to appeal the Council's decision, she is barred based on various other theories that prevent Plaintiff from re-litigating issues of the applicability of the Town's density requirements, of whether Plaintiff met those requirements, and of whether the Town acted appropriately to stop the development.

{14} The Town's theories are the following. First, the Town asserts that to permit Plaintiff to overturn the Council's decision by re-litigating the issue under the original jurisdiction of the district court would be an unlawful invasion and usurpation of the authority "that has been delegated exclusively to the Town Council under New Mexico statutory and constitutional law," relying on NMSA 1978, §§ 3–21–1 to –26 (1965, as amended through 2003). The Town argues the district court "may not substitute its judgment for that of the administrative body." *Hart*, 1999–NMCA–043, ¶ 9, 126 N.M. 753, 975 P.2d 366; *see also Coe*, 76 N.M. at 774, 418 P.2d at 547 (holding that courts cannot zone land or substitute their judgment or discretion for that of the municipal body); *VanderVossen v. City of Espanola*, 2001–NMCA–016, ¶¶ 13–16, 130 N.M. 287, 24 P.3d 319 (stating that "[z]oning determinations are special proceedings" as contemplated in N.M. Const. art. VI, § 13 and not within the district court's original jurisdiction). The Town also argues that, pursuant to *VanderVossen*, the district court's review of zoning decisions is prescribed by Sections 39–3–1.1 and 3–21–9 and that these provisions permit only review of the administrative record.

{15} Second, the Town asserts that a district court determination that Plaintiff was entitled to an additional fourteen units would violate the separation of powers imposed by Article III, Section 1 of the New Mexico Constitution. *See Coe*, 76 N.M. at 774, 418 P.2d at 547 (holding district court's order requiring a zone change was unlawful be-cause zoning was "a function to be exercised by a department of government other than the judiciary").

{16} Third, the Town asserts that when administrative review is not pursued, the determination of a local authority having jurisdiction of the subject matter and the parties must be given res judicata effect and cannot be collaterally attacked. The Town cites a number of authorities in support of this proposition. *See Shovelin v. Central N.M. Elec. Coop.*, 115 N.M. 293, 298, 850 P.2d 996, 1001 (1993) (holding administrative adjudicative decisions may be given preclusive effect); *City of Socorro v. Cook*, 24 N.M. 202, 212, 173 P. 682, 685 (1918) (holding decision by city council, under a special act of the Legislature to determine title to city lands, was res judicata and not subject to collateral attack); *VanderVossen*, 2001–NMCA–016, ¶¶ 19–21, 130 N.M. 287, 24 P.3d 319 (discussing circumstance under which a zoning decision may be challenged by a collateral attack); *Bogan v. Sandoval County Planning & Zoning Comm'n*, 119 N.M. 334, 340–41, 890 P.2d 395, 401–02 (Ct.App.1994) (holding a planning and zoning commission's "decision was not subject to collateral attack as void" but may be voidable); *see also Briggs v. City of Rolling Hills Estates*, 40 Cal.App.4th 637, 47 Cal.Rptr.2d 29, 32–33 (1995) (holding plaintiff's § 1983 civil rights attack on city council's decision imposing conditions for home addition was barred because plaintiff failed to pursue administrative writ of mandamus); *Rossco Holdings, Inc. v. State of Cal.*, 212 Cal.App.3d 642, 260 Cal.Rptr. 736, 744 (1989) (holding property owner could not assert an inverse condemnation claim in order to attack a permit condition if the owner has not obtained a reversal of the condition without first petitioning for statutory administrative writ of mandamus through the required procedure).

{17} We do not think the Town's arguments and authorities are persuasive on the issue before us. The Town misses the point. The question faced by the Town was whether Plaintiff's project should be discontinued due to violation of the density limitations in the zoning regulations. The issue before the Town Council was whether to allow Plaintiff

to continue under a special use permit. The Council decided against issuance of a special use permit. This meant that the Town's decision to enforce the density regulation and prohibit further development would continue in force. The issues before the district court were whether, based on the circumstances Plaintiff alleges in her complaint and other facts she intends to prove, the Town should be estopped to enforce its density regulation, assuming that Plaintiff could prove she had a vested right to complete the project, and whether the Town should be liable in inverse condemnation, two recognized claims in New Mexico. *See* § 42A–1–29 (establishing right of action for taking or damage by government of property without compensation); *Estate & Heirs of Sanchez v. County of Bernalillo,* 120 N.M. 395, 398, 902 P.2d 550, 553 (1995) ("[T]he New Mexico Constitution mandates compensation both when a governmental action results in a taking of property and when such action damages property."); *Sandoval County Bd. of Comm'rs v. Ruiz,* 119 N.M. 586, 589, 893 P.2d 482, 485 (Ct.App. 1995) (stating requirements for establishing vested use).

{18} Nothing in the complaint states that the issues underlying these claims were presented by Plaintiff to the Town Council, or decided by the Council. We are unaware of any authority giving the Town Council jurisdiction or authority to consider claims for damages for inverse condemnation. We are unaware of any reason why an inverse condemnation claim should be barred simply because a local authority has denied a special use permit sought by the landowner in an attempt to reach a mutually acceptable solution, after the authority has prevented the landowner from completing his or her project. Further, assuming, without deciding, that they have authority to address an estoppel claim, where the local authorities have not at the landowner's request addressed and decided an estoppel claim, we are unaware of any reason why an estoppel claim based on a vested right cannot be asserted in an action invoking the original jurisdiction of the district court. While the amount of acreage and the density limitations were likely considered by the Town Council for its determinations, and would also likely be considered by the

district court in assessing liability under the estoppel and inverse condemnation claims, this overlap does not necessarily mean fact preclusion sets in to bar Plaintiff's claims. Furthermore, on the record before us, we see no basis to invoke claim preclusion or separation of powers to bar, as a matter of law under Rule 1–012(B)(6), Plaintiff's action invoking the district court's original jurisdiction.

{19} Plaintiff properly sought the special use permit. It was reasonable for her to attempt an administrative resolution before proceeding to court. A review pursuant to Section 39–3–1.1 and Rule 1–074 would have been limited to the narrow matter of the special use permit. Neither the initial decision by the Town to halt Plaintiff's development, nor the denial by the Town Council of Plaintiff's application for a special use permit, can deny Plaintiff access to the original jurisdiction of the district court to attempt to establish her asserted right to continue construction pursuant to the previous approvals and permits issued by the Town, under claims of estoppel (vested rights) and inverse condemnation. Whether Plaintiff will be able to establish her claims is a different issue and one on which we express no opinion.

{20} Were the result as the Town would have it, neither an estoppel claim nor an inverse condemnation claim could be litigated in district court even were the administrative process completed through an appeal to the district court. That does not appear to us to be a result contemplated under any New Mexico constitutional provision, statute, or case law. Nor does it appear to be sound. The Town's cases and arguments asserting fact and claim preclusion are based on administrative quasi-judicial adjudications of facts and issues where the attempted subsequent court adjudication would actually amount to a second adjudication of the same facts and issues. *See Shovelin,* 115 N.M. at 299, 850 P.2d at 1002 (holding it was not an abuse of discretion for a district court to refuse to apply collateral estoppel to an administrative hearing to litigate the issue contested); *Cook,* 24 N.M. at 212, 173 P. at 685 ("[D]ecisions rendered by an officer or a board legally constituted and empowered to

settle[ ] the question submitted to it, when acting judicially, have the force and effect of a judgment."). Furthermore, the Town has presented no persuasive argument or authority that, at least in regard to inverse condemnation, an administrative body has authority to adjudicate all of the essential facts of the claim or to award damages. We are not aware of any such authority. *See* § 3–21–1(A) (giving municipal and county zoning authorities power to regulate and restrict "(1) height, number of stories and size of building and other structures; (2) percentage of a lot that may be occupied; (3) size of yards, courts and other open space; (4) density of population; and (5) location and use of building, structures and land for trade, industry, residence or other purposes"); *cf. Western PCS II Corp. v. Extraterritorial Zoning Auth.*, 957 F.Supp. 1230, 1238 (D.N.M.1997) ("Respondents have given the Court no authority to indicate that [a zoning commission] has the power or the expertise to adjudicate questions of property law. The New Mexico Supreme Court has held that 'it is not within the proper function of the zoning authority to condition an exception to the use of real property upon personal rights of ownership, rather than use.' " (citation omitted)); *Mechem v. City of Santa Fe*, 96 N.M. 668, 671–72, 634 P.2d 690, 693–94 (1981) (holding a "City obtains its authority to zone from Sections 3–21–1 through 3–21–26" and "[i]t has no zoning authority beyond that provided by statute," concluding a zoning authority may not regulate personal rights of property ownership rather than use of property); *Tevis v. McCrary*, 72 N.M. 134, 136, 381 P.2d 208, 209 (1963) ("The determination of priority of water rights ... is a judicial function, not administrative.").

### 2. Estoppel

■ {21} Plaintiff claims to have a vested right to complete the apartment development. The Town argues that Plaintiff failed to state a claim for estoppel because she requested an entirely new building permit thereby permitting the Town to reassess the propriety of further or continued construction and occupation, and also because Plaintiff supplied incorrect information in seeking

the original approvals and building permit. These arguments raise or assume facts that are not before us and cannot be considered on a Rule 1–012(B)(6) dismissal. *See Moriarty Mun. Schs. v. N.M. Pub. Schs. Ins. Auth.*, 2001–NMCA–096, ¶ 16, 131 N.M. 180, 34 P.3d 124 ("Because this case is before us on appeal of an order granting a motion to dismiss under Rule 1–012(B)(6), we do not consider any documents or evidence outside the pleadings ...."). Further, for the reasons stated in this opinion, we also reject the Town's contention that the Town Council's decision on the special use permit ends the matter, precluding Plaintiff from asserting her estoppel claim in the district court. We determine that the district court erred in dismissing Plaintiff's estoppel claim.

### 3. Inverse Condemnation

■ {22} The Town argues that Plaintiff failed to state a claim for inverse condemnation because any damage to Plaintiff's property is not damage that affected a right or interest she enjoys which is not shared or enjoyed by the public generally, and because she did not lose all beneficial use of her property. The Town points out that Plaintiff alleges she has twenty-eight permitted residential units. The Town relies on a string of New Mexico cases as authority to support the dismissal. *See Estate & Heirs of Sanchez*, 120 N.M. 395, 902 P.2d 550; *Aragon & McCoy v. Albuquerque Nat'l Bank*, 99 N.M. 420, 659 P.2d 306 (1983); *Public Serv. Co. v. Catron*, 98 N.M. 134, 646 P.2d 561 (1982); *Miller v. City of Albuquerque*, 89 N.M. 503, 554 P.2d 665 (1976); *Bd. of County Comm'rs v. Harris*, 69 N.M. 315, 366 P.2d 710 (1961).

{23} Plaintiff maintains that she suffered unique injury, suggesting that "[s]urely the Town does not contend that there are others who have been placed in a similar predicament by the Town's actions." Plaintiff argues that it is the building permit followed by the expenditures in reliance on the permit "that protects a landowner from shifting governmental regulations, not approvals preparatory thereto." While it would appear that under the case law Plaintiff could have an uphill battle in sustaining her inverse condemnation claim, we are not prepared to

affirm the dismissal of that claim. We think the better ruling on this issue is to allow Plaintiff to proceed past the Rule 1–012(B)(6) dismissal along with her estoppel claim, since it is not yet apparent that Plaintiff can neither recover nor obtain relief under any state of facts provable under the inverse condemnation claim.

## CONCLUSION

{24} We reverse and remand to the district court for reinstatement of Plaintiff's complaint.

{25} **IT IS SO ORDERED.**

ALARID and PICKARD, JJ., concur.